## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| In re: James A. Begley, | ) | |
| | ) | **Case No.** 3:20-bk-30342-SHB |
| **Debtor.** | ) | Chapter 7 |
| | ) | |
| Rich Steel, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | Adversary No. 20 A _____ |
| vs. | ) | |
| | ) | |
| James A. Begley, Debtor, | ) | |
| | ) | |
| **Defendant.** | ) | |

## COMPLAINT TO DETERMINE NONDISCHARGEABILITY OF DEBT

NOW COMES Plaintiff, Rich Steel, by his attorneys, Patrick J. Mayerbock and Gregory Bryan Ruggie of Mayerbock Law Firm, and in complaining of the Defendant, James A. Begley ("Defendant"), states as follows:

## NATURE OF THE ACTION

1.      This is an adversary proceeding brought by Plaintiff, an unsecured creditor of Defendant, against Defendant for breach of contract and fraud, pursuant to Section 523(a)(2) of Title 11 of the United States Bankruptcy Code, and Rules 7001 et seq. of the Federal Rules of Bankruptcy Procedure.

## JURISDICTION AND VENUE

2.      The Bankruptcy Court for the Eastern District of Tennessee has jurisdiction pursuant to 28 U.S.C. § 1334(b) because this adversary proceeding arises in, arises under, and is related to the Chapter 7 case, *In re James A. Begley*, pending in the United States Bankruptcy Court for the Eastern District of Tennessee as Case No. 3:20-bk-30342-SHB.

3.      This Court has personal jurisdiction over Defendant pursuant to Federal Rule of

Bankruptcy Procedure 7004(f).

4.      Venue is proper in this District pursuant to 28 U.S.C. § 1409(a).

5.      This Complaint is a "core" proceeding, pursuant to 28 U.S.C. §157(b)(2).

## PARTIES

6.      Plaintiff is an unsecured creditor of Defendants.

7.      Defendant is a resident of Tennessee and was at all applicable times a debtor to Plaintiff.

## BACKGROUND

8.      In early 2019, Defendant began a fraudulent scheme in which he promised to Plaintiff a

significant return on Plaintiff's investments. Defendant took numerous loans from

Plaintiff to purchase and restore vehicles, promising to sell the vehicles and split the

profits, only to later sell, transfer, or otherwise dispose of the vehicles without

compensating Plaintiff.

9.      Defendant claimed to have extensive knowledge of "The Super Car Market", the "Muscle

Car Market", the "Truck Market", and of restoration of vehicles in order to fraudulently

induce Plaintiff into loaning money to Defendant for a mutual investment agreement to

restore and sell trucks for a profit.

10.     Defendant had no intention of paying back Plaintiff for the loans and had no intention of

splitting the profits after the sale of the vehicles.

## LEGAL STANDARD

11.     Section 523(a) of Title 11 of the United States Bankruptcy Code states that "[a]

discharge…does not discharge an individual debtor from any debt for money, property,

services, or an extension, renewal, or refinancing of credit, to the extent obtained by false

pretenses, a false representation, or actual fraud…". 11 U.S.C. 523(a)(2)(A).

## **STATEMENT OF FACTS**

12.    On or about January 20, 2019, Defendant specifically sought out Plaintiff and emailed

him about an "opportunity  to capitalize on the Truck Market…" and claimed  that they

could both "get into the Truck Market, make MONEY, history, get a leg up on the market

and secure our place for many years to come"; a copy of said email is attached hereto as

Exhibit A and made a part hereof.

13.    On or about February 7, 2019, Defendant then entered into an investment agreement with

Plaintiff in which Plaintiff would loan the principal sums for purchases of vehicles which

were to be restored by Defendant and sold for a profit.

14.    On February 7, 2019, Plaintiff loaned the principal sum of $11,000.00 to Defendant for

the    purchase    of    a    1986    Chevrolet    C-10    Silverado    pickup    truck,    VIN:

1GCDC14H8GF420806, which was to be restored and sold for a profit by Defendant.

15.    Plaintiff and Defendant memorialized this agreement in a writing signed by Defendant, a

copy of which is attached hereto as Exhibit B and made a part hereof.

16.    While the memorialization of the agreement was not signed by Defendant until on or

about March 5, 2019, Plaintiff funded the principal sum for the purchase of the vehicle on

February 7, 2019, as is evidenced by the J.P. Morgan financial statement, a copy of which

is attached hereto as Exhibit C and made a part hereof.

17.    Also on or about February 7, 2019, in furtherance of the mutual investment agreement,

Plaintiff loaned the principal sum of $9,000.00 to Defendant for the purchase of a 1979

Chevrolet C-10 Silverado pickup truck, VIN: CCD139F369150, which was to be restored

and sold for a profit by Defendant. *Ex. C.*

18.    Also on or about February 7, 2019, in furtherance of the mutual investment agreement,

Plaintiff loaned the sum of $2,500.00 to Defendant to be used for the restoration of the

1979 Chevrolet C-10 Silverado. *Ex. C.*

19.    On or about March 8, 2019, Plaintiff loaned another $2,500.00 to Defendant for the

restoration of the 1979 Chevrolet C-10 Silverado. *Ex. C.*

20.    Plaintiff and Defendant memorialized their agreement to restore and sell the 1979

Chevrolet C-10 Silverado for a profit in a writing signed by Defendant, a copy of which

is attached hereto as Exhibit D and made a part hereof.

21.    While the memorialization of their agreement indicates that Plaintiff funded the principle

sum of $10,012.00, the actual total amount of money financed by Plaintiff for purchase of

and restoration of the 1979 Chevrolet C-10 Silverado was $14,000.00, as is evidenced by

the J.P. Morgan financial statement. *Ex. C.*

22.    While the memorialization of their agreement indicates the VIN for the 1979 Chevrolet

C-10 Silverado is CCD139F369150, the title document for the vehicle indicates that the

correct VIN is: CCD149F369150, a copy of which is attached hereto as Exhibit E and

made a part hereof.

23.    The VIN was incorrectly identified on the memorialization of their agreement so as to

further Defendant's fraudulent scheme against Plaintiff.

24.    In furtherance of their mutual investment agreement, on March 22, 2019, Plaintiff loaned

the principal sum of $17,000.00 to Defendant for the purchase of a 1969 Ford Mustang,

VIN: 9F03F467259, which was to be restored and sold for a profit by Defendant, as is

evidenced by the J.P. Morgan financial statement, a copy of which is attached hereto as
Exhibit F and made a part hereof.

25.    Plaintiff and Defendant memorialized this agreement in a written contract signed by both
parties on or about March 22, 2019 (hereinafter referred to as the "Contract"), a copy of
which is attached hereto as Exhibit G and made a part hereof.

26.    The Contract provides that "[u]pon the sell of *each* vehicle James A. Begley agrees to
pay Rich Steel the principle amount invested in the vehicle also 50% of the profit for the
return of the title" (emphasis added). *Ex. G.*

27.    The 1969 Ford Mustang was sold on or about May 28, 2019, with the profits being split
evenly between Plaintiff and Defendant.

28.    Under the Contract, the principal investment of $17,000 that was used to purchase the
1969 Ford Mustang was then used to finance the purchase of another vehicle to be
restored and sold for a profit, namely, a 1963 Chevrolet C-10 Pickup truck, VIN:
3C144A119605, as is evidenced by the written statements made by Defendant in the
memorialization of their agreement to purchase and sell the 1963 Chevrolet C-10 Pickup
truck, a copy of which is attached hereto as Exhibit H and made a part hereof.

29.    While the Contract indicates the VIN for the 1969 Ford Mustang is 9F03F467259, the
title document for the vehicle indicates that the correct VIN is: 9F03L167259, a copy of
which is attached hereto as Exhibit I and made a part hereof.

30.    The VIN was incorrectly identified on the Contract so as to further Defendant's
fraudulent scheme against Plaintiff.

31.    On or about April 12, 2019, in furtherance of their mutual investment agreement, Plaintiff
funded the principal sum of $20,000.00 to Defendant for the purchase of a 1965

Chevrolet C-10 Pickup truck, VIN: C1445Z164512, as is evidenced by the J.P. Morgan financial statement, a copy of which is attached hereto as Exhibit J and made a part hereof.

32.    Only $18,000.00 of the $20,000.00 loan on or about April 12, 2019 was used to purchase the 1965 Chevrolet C-10 Pickup truck however, and $2,000.00 was returned to Plaintiff.

33.    On or about April 22, 2019, in furtherance of their mutual investment agreement, Plaintiff funded the sum of $833.68 to Defendant for restoration work to be done to the 1979 Chevrolet C-10 Pickup truck, as is evidenced by the J.P. Morgan financial statement, a copy of which is attached hereto as Exhibit K and made a part hereof.

34.    Plaintiff reasonably relied on the written assertions in the Contract, the written representations in the memorialization of their investment agreement, and the oral representations made by Defendant.

35.    The statements, both verbal and written, that the principle and half the profits would be returned to Plaintiff, were false statements intended to induce Plaintiff to enter into the Contract and the investment agreement.

36.    Acting in reliance on those false statements, Plaintiff upheld his end of the bargain and provided the principal funds for the purchase of the vehicles and the funds for restoration of the vehicles.

37.    Defendant has sold, transferred, or otherwise disposed of the vehicles without honoring the Contract's terms or the terms of the investment agreement, and without providing the principal or any portion of the profits to Plaintiff, except for the profits of the sale of the 1969 For Mustang which were split evenly.

38.     Plaintiff Rich Steel has suffered and will continue to suffer significant damages as a result of Defendant's conduct.

39.     Defendant's conduct amounts to actual fraud and his debts to Plaintiff Rich Steel are non-dischargeable under 11 U.S.C. § 523(a)(2)(A).

## COUNT I – BREACH OF CONTRACT

40.     Plaintiff incorporates herein, paragraphs 1 through 39 as listed above.

41.     In Tennessee, "[t]he essential elements of any breach of contract claim include (1) the existence of an enforceable contract, (2) nonperformance amount to a breach of the contract, and (3) damages cause by the breach of the contract". *LifeMed, Inc. v. AMC-Tenn., Inc.,* 183 S.W.3d 1, 26 (Tenn. Ct. App. 2005).

42.     In the instant matter, Defendant entered into an enforceable contract when he agreed to enter into the mutual investment agreement with Plaintiff to purchase and restore vehicles for a profit.

43.     When Defendant sold, transferred, or otherwise disposed of the vehicles without compensating Plaintiff with either repayment of the principal or splitting of the profits, Defendant breached the contract's terms.

44.     Plaintiff has suffered extensive damages as a result of Defendant's breach.

        WHEREFORE, for the foregoing reasons, pursuant to §523(a)(2)(A) of the U.S. Bankruptcy Code, Plaintiff prays that the Court determine that the debt owed by Defendant to Plaintiff pursuant to the Contract signed by Defendant James A. Begley as set forth herein is non-dischargeable, enter a judgment in favor of Plaintiff in excess of $75,000.00, award Plaintiff its attorneys' fees and costs for this matter, and grant such other relief as the Court deems just and reasonable.

## <u>COUNT II – FRAUD</u>

45.　　Plaintiff incorporates herein, paragraphs 1 through 44 as listed above.

46.　　In Tennessee, "[w]hen a party intentionally misrepresents a material fact or produces a false impression in order to mislead another or to obtain an undue advantage over him, there is a positive fraud. The representation must have been made with knowledge of its falsity and with a fraudulent intent. The representation must have been to an existing fact which is material and the plaintiff must have reasonable relied upon that misrepresentation to his injury". *Brown v. Birman Managed Care, Inc.*, 42 S.W.3d 62, 66-67 (Tenn. 2001).

47.　　In the instant matter, Defendant made multiple misrepresentations of material fact when he stated, both orally and in writing, that he would pay the principal investment used to fund the purchase of the vehicles back to Plaintiff along with half of the profits.

48.　　In the instant matter, Defendant made multiple misrepresentations of material fact in incorrectly identifying the vehicle identification numbers for the vehicles to Plaintiff.

49.　　Defendant made these misrepresentations for the purpose of misleading Plaintiff.

50.　　Defendant made these misrepresentations knowing that they were false and with an intent to induce Plaintiff to fund the purchase of the vehicles.

51.　　Defendant's misrepresentations were surrounding a material fact, namely that he would refund the principal investment for the purchase of the vehicles along with half of the profits.

52.　　Plaintiff reasonably relied on Defendant's misrepresentations.

53.　　Plaintiff has suffered extensive damages as a result of Defendant's misrepresentations.

　　　　WHEREFORE, for the foregoing reasons, pursuant to §523(a)(2)(A) of the U.S. Bankruptcy Code, Plaintiff prays that the Court determine that the debt owed by Defendant to Plaintiff pursuant to the Contract signed by Defendant James A. Begley as set forth herein is

non-dischargeable, enter a judgment in favor of Plaintiff in excess of $75,000.00, award Plaintiff

its attorneys' fees and costs for this matter, and grant such other relief as the Court deems just

and reasonable.

## COUNT III – UNJUST ENRICHMENT

54.     Plaintiff incorporates herein, paragraphs 1 through 39 as listed above.

55.     To succeed on an unjust enrichment claim, a Plaintiff must show: "1) '[a] benefit

conferred upon the defendant by the plaintiff'; 2) 'appreciation by the defendant of such benefit';

and 3) 'acceptance of such benefit under such circumstances that it would be inequitable for him

to retain the benefit without payment of the value thereof'". *Freeman Indus., LLC. v. Eastman*

*Chem. Co.,* 172 S.W.3d 512, 525 (Tenn. 2005), quoting *Paschall's Inc. v. Dozier*, 407 S.W.2d

150, 155 (Tenn. 1966).

56.     In the instant matter, Plaintiff conferred a benefit to Defendant in that he loaned over

$60,000.00.

57.     Defendant appreciated the benefit, as is evidenced by the fact that he used the money to

purchase numerous vehicles.

58.     It would be inequitable to permit Defendant to retain this benefit, particularly given the

statements made by Defendant, both oral and written, that he would refund Plaintiff the principal

and split the profits evenly after the vehicles were sold.

WHEREFORE, for the foregoing reasons, pursuant to §523(a)(2)(A) of the U.S.

Bankruptcy Code, Plaintiff prays that the Court determine that the debt owed by Defendant to

Plaintiff pursuant to the Contract signed by Defendant James A. Begley as set forth herein is

non-dischargeable, enter a judgment in favor of Plaintiff in excess of $75,000.00, award Plaintiff

its attorneys' fees and costs for this matter, and grant such other relief as the Court deems just

and reasonable.

Respectfully submitted,

Patrick J. Mayerbock
#49715                                      _____
5791 North Elston Avenue                           **Patrick J. Mayerbock**
Chicago, IL 60646                                  **Attorney for Rich Steel**
P: 312-866-9338
F: 773-598-8724
Patrick@MayerbockLaw.com

# **EXHIBIT A**



**From:** Rich Steel █████████ 📎
**Subject:** Fwd: Barrett Jackson
**Date:** December 19, 2019 at 10:12 AM
**To:** ████████████████

Sent from my iPhone

Begin forwarded message:

**From:** Tony Begley ████████████████████
**Date:** January 20, 2019 at 9:35:02 AM CST
**To:** rich steel ███████████████
**Subject: Barrett Jackson**

Morning Rich

Barrett Jackson is more of a collector car market indicator than Mecum, its always been that way. The BJ auction confirmed my predication about the health and direction of the Muscle Car Market. The winners were trucks and resto mods. Resto Mods is a fashion style market and have a younger base than the baby boomers, but it is a very risky market. The Super Car Market is very strong and growing with a ton of upside, good news, we have a ton of them we can sale for the owners without us having to spend a penny to get them. We both know now that Muscle Cars and Corvette's are way down. I saw between Dana and BJ cars that lost thousands and thousands of dollars. I would hate to be a dealer right now that sells just Muscle Cars, they just watched their inventory value just go out the window from the 2 largest collector car auctions that start the year off setting the market for the entire year.

We know that the hottest new market is Trucks. Trucks are an American institution, without them, America would not be the place we know today, they helped build our country. Trucks have no select group, they are popular in all ages groups and generations. We have an opportunity to capitalize on the Truck Market and become leaders in that new market just like I did when the time was right in the Muscle Car Market. I started making money with Muscle Cars in 1978, its been a great run, buts its now fading into history. The time is right! Lets get into the Truck Market, make MONEY, history, get a leg up on the market and secure our place for many years to come.

Let make money and have fun doing it. Its time to Rock Doc, lets do it Rich, lets get the show on the road!

The pic is of a 68 Elcamino, I think this could have been built by Yenko and sold by another dealer. We can steal it, its a money maker even if it is a replica, but I think its real. If my hunch is right, we could make a huge profit on it.





# **EXHIBIT B**

 Gmail                                                    **Tony Begley**

---

## Promissory Note
1 message

**Tony Begley**                                                    Tue, Mar 5, 2019 at 8:05 PM
To: Tony Begley

---

This agreement is being entered into as of March 6, 2019 between Rich Steel of
Chicago, IL and James A. Begley TN

Rich Steel has funded the principle sum of ($12504) to James A. Begley, the funds are used as
follows: To market and sell an 86 Black C10 Silverado Shortbed Pickup restored
VIN:1GCDC14H8GF420806.

Upon a successful sell of the above mentioned vehicle, the profit will be split 50/50 **after
proof of expenses for the v**ehicle. **Jam**es A. Begley agrees to pay Rich Steel the
principle amount invested in each vehicle in addition to 50% of the profit for the return of the
title.

Signed: _____

Date: *3/6/19*

Rich Steel, Investor

Signed:

Date: 3/6/19

· James A. Begley, Recipient of funds

# **EXHIBIT C**

*J.P. Morgan*

**RICH STEEL**

**Primary Account:** ▮▮▮▮▮

**For the Period 2/1/19 to 2/28/19**

## Payments & Transfers

| Date | Description | Amount |
|---|---|---|
| 02/04 | | |
| 02/06 | | |
| 02/07 | 02/07 Fedwire Debit Via: Smartbank/064209216 A/C: James A Begley Ref: 1986 Black Silverado Shortbed Pickup Vin 1Gcdc14H8Gf420806 Imad: 0207B1Qgc07C013345 Trn: 1250700038Es | 11,000.00 |
| 02/07 | 02/07 Fedwire Debit Via: Smartbank/064209216 A/C: James A Begley Ref: 1979 C10 Silverado Shortbed Pickup Vin CCD139F369150 Imad: 0207B1Qgc03C004949 Trn: 1250900038Es | 9,000.00 |
| 02/07 | 02/07 Fedwire Debit Via: Smartbank/064209216 A/C: James A Begley Ref: Vehicle Restoration Allowance Imad: 0207B1Qgc07C013344 Trn: 1251000038Es | 2,500.00 |
| 02/14 | | |
| 02/14 | | |
| 02/19 | | |
| 02/19 | | |
| 02/28 | | |

**Total Payments & Transfers**



## Fees, Charges & Other Withdrawals

| Date | Description | Amount |
|---|---|---|
| 02/22 | | |

**Total Fees, Charges & Other Withdrawals**

J.P.Morgan



J.P.Morgan

RICH STEEL

**Primary Account:**

For the Period 3/1/19 to 3/29/19

## ATM & Debit Card Transactions CONTINUED

| Date | Description | Amount |
|------|-------------|--------|
| 03/18 | | |
| 03/18 | | |
| 03/18 | | |
| 03/19 | | |
| 03/20 | | |
| 03/25 | | |
| 03/26 | | |
| 03/28 | | |

**Total ATM & Debit Card Transactions**

## Payments & Transfers

| Date | Description | Amount |
|------|-------------|--------|
| 03/01 | | |
| 03/04 | | |
| 03/04 | | |
| 03/04 | | |
| 03/06 | | |
| 03/08 | 03/08 Fedwire Debit Via: Smartbank/064209216 A/C: James A Begley Ref: Vehicle Restoration Allowance Imad: 0308B1Qgc06C017981 Trn: 1239100067Es | 2,500.00 |
| 03/22 | | |
| 03/22 | | |

**Total Payments & Transfers**



J.P.Morgan

# <u>EXHIBIT D</u>

M Gmail

**Tony Begley**

## Promissory Note
1 message

**Tony Begley**
To: Tony Begley

Tue, Mar 5, 2019 at 9:12 PM

This agreement is being entered into as of March 6, 2019 between Rich Steel of
Chicago, IL and James A. Begley TN

Rich Steel has funded the principle sum of ($10012) to James A. Begley, the funds will be used as follows: To market and sell when restoration is complete a 1979 C10 Silverado Shortbed Pickup Custom Modified VIN:CCD139F369150. $5,000 will be used to finish the restoration on the *1979 C10* mentioned above. *2500 has been advanced from the original 5,000, the remaining 2500 is to be wired on Friday, March 8th, 2019.*

Upon a successful sell of the above mentioned vehicle, the profit will be split 50/50 a**fter proof of expenses for the v**ehicle. **Jam**es A. Begley agrees to pay Rich Steel the principle amount invested in the vehicle, in addition to 50% of the profit for the return of the title.

Wiring instructions: Beneficiary Bank: **Address:**

Fed RTN:

Beneficiary Credit:
**James** A. Begley     TN,

Beneficiary Credit Account Number:

Signed: _____

Date: _ *3/6/19*

Rich Steel, Investor

Signed:

Date: 3/6/19

· James A. Begley, Recipient of funds.

# **EXHIBIT E**

**From:** Rich Steel
**Subject:** Titles
**Date:** December 18, 2019 at 2:01 PM
**To:**



STATE OF TENNESSEE

**CERTIFICATE OF TITLE**

| VEHICLE IDENTIFICATION NUMBER | YEAR | MAKE | MODEL | BODY TYPE | TITLE NUMBER |
|---|---|---|---|---|---|
| CCD149F369150 | 1979 | CHEV | CC1 | PK | 80193751 |

| NEW USED DEMO | PREVIOUS TITLE NO | PREV STATE | SALES OR USE TAX | CO | ODOMETER |
|---|---|---|---|---|---|
| X | 80192043 | TN | $9.75 | 45 | |

DATE TITLE ISSUED        09-18-2009        REMARKS
DATE VEHICLE ACQUIRED    09-18-2009

TONY CATE

SUBMITTED UNDER TENNESSEE CODE ANNOTATED,
55-3-101, TITLE TO THE MOTOR VEHICLE DESCRIBED
ABOVE IS VESTED IN THE OWNER'S NAME HEREIN.
THIS OFFICIAL CERTIFICATE OF TITLE IS ISSUED
FOR SAID MOTOR VEHICLE.

08494418

THE ORIGINAL DOCUMENT HAS A WHITE REFLECTIVE WATERMARK ON THE BACK. HOLD AT AN ANGLE TO SEE THE MARK.

STATE OF TENNESSEE



# **EXHIBIT F**

*J.P.Morgan*

RICH STEEL

**Primary Account:** ▮

**For the Period 3/1/19 to 3/29/19**

## Private Client Savings

| Savings Account Summary | Amount | |
|---|---|---|
| Beginning Balance | ▮ | Annual Percentage Yield Earned This Period* |
| Deposits & Credits | | Interest Paid This Period |
| Payments & Transfers | | Interest Paid Year-to-Date |
| Fees, Charges & Other Withdrawals | | |
| Ending Balance | | |

*Annual Percentage Yield Earned is an annualized rate that reflects the relationship between the amount of interest actually earned on the account during this statement period and the average daily balance in this account for the same period.*

## Transaction Detail

| Date | Description | Deposits & Credits | Transfers & Withdrawals | Balance |
|---|---|---|---|---|
| **03/01** | **Beginning Balance** | | | ▮ |
| 03/20 | ▮ | | | ▮ |
| 03/22 | 03/22 Fedwire Debit Via: Smartbank/064209216 A/C: James A Begley Ref: 1969 Ford Mustang Convertible Custom Modified Vin 9F03F467259 Imad: 0322B1Qgc05C005094 Trn: 1140100081Es | | 17,000.00 | ▮ |
| 03/22 | ▮ | | | |
| 03/25 | | | | |
| 03/26 | | | | |
| 03/28 | | | | |
| 03/29 | | | | |
| **03/29** | **Ending Balance** | | | ▮ |
| **Total** | | ▮ | | |

## J.P.Morgan

# **EXHIBIT G**

INVESTMENT AGREEMENT

This agreement is being entered into as of March 22, 2019 between Rich Steel of

Chicago, IL and James A. Begley TN

Rich Steel agrees to fund the principle sum of Seventeen thousand ($17,000) to James A. Begley. The

funds will be used as follows: 1.) 17,000 will be used for the purchase of a 1969 Mustang Convertible

Custom Modified. VIN:9F03F467259

Upon purchase of the above mentioned vehicle, the title and bill of sale will be sent to Rich Steel.

The vehicle will then have a separate note drawn up with the total amount invested in it to get it ready for sale.
When the Mustang sells

profit will be split 50/50 after proof of expenses for the vehicle as per the new note. Upon the sell of

each vehicle James A. Begley agrees to pay Rich Steel the principle amount invested in the vehicle also

50% of the profit for the return of the title.

Wiring instructions: Beneficiary Bank:

Address:

Fed RTN:

Beneficiary Credit: James A. Begley

TN,

Beneficiary Credit Account Number:

Signed: _Rich Steel._   _3/22/19_____ Date:

_____

Rich Steel, Investor

Signed: _____ _3/22/19_ Date:

_____

James A. Begley, Recipient of funds to invest

# **<u>EXHIBIT H</u>**

 **Gmail**

**Tony Begley**

**1963 Truck**
1 message

**Tony Begley**
To: Tony Begley

Tue, May 28, 2019 at 1:58 PM

This agreement is being entered into as of May 28, 2019 between Rich Steel of
Chicago, IL          and James A. Begley
TN

Rich Steel has funded the principle sum of ($17728) to James A. Begley, the funds are used as
follows: To market and sell an 1963 Chevrolet Shortbed Pickup  VIN: 3C144A119605

Upon a successful sell of the above mentioned vehicle, the profit will be split 50/50 **after
proof of expenses for the vehicle. James A. Begley agrees to pay Rich Steel the
principle amount invested in each vehicle in addition to 50% of the profit for the return of the
title.

## Signed: _____

## Date: *4/19/19*

Rich Steel, Investor

Signed:
Date: 4/19/19
· Jame

*Proceeds to buy this truck
come from 69 Mustang #7259
And From Tony Begley in the
amount of $272 for a total of
8,000*

*Sign, Send and
Send back to me
Via Email Rich*

## 1963 Chevrolet C10

Pickup 1/2 Ton Fleetside Shortbed

### Values

|  | Original MSRP | Low Retail | Average Retail | High Retail |
|---|---|---|---|---|
| Base Price | $2,025 | $17,200 | $30,900 | $77,000 |
| **Options** (Add) | | | | |
| **Total Price** | **$2,025** | **$17,200** | **$30,900** | **$77,000** |

## Value Type Definitions

**Original MSRP**
Manufacturer Suggested Retail Price

**Low Retail Value**
This vehicle would be in mechanically functional condition, needing only minor reconditioning. The exterior paint, trim and interior would show normal wear, needing only minor reconditioning. May also be a deteriorated restoration or a very poor amateur restoration. Most usable 'as-is'. This column does **not** represent a 'parts car' or a non-running vehicle.

**Note: Some of the vehicles in this publication could be considered 'Daily Drivers' and are not valued as a classic vehicle. When determining a value for a daily driver, it is recommended that the subscriber use the low retail value.**

**Average Retail Value**
This vehicle would be in good condition overall. It could be an older restoration or a well-maintained original vehicle. Completely operable. The exterior paint, trim and mechanics are presentable and serviceable inside and out. A "20-footer".

**High Retail Value**
This vehicle would be in excellent condition overall. It could be a completely restored or an extremely well-maintained original vehicle showing very minimal wear. The exterior paint, trim and mechanics are not in need of reconditioning. The interior would be in excellent condition. Some vehicles may be considered "matching numbers" vehicles.

**Note:** This column does **not** represent a "100 Point" or "# 1" vehicle*.

* A "100 Point" or "# 1" vehicle is not driven. It would generally be in a museum or transported in an enclosed trailer to concours judging and car shows. This type of car would be stored in a climate regulated facility.

© 2019 J.D. Power. All rights reserved. ® A registered trademark of the National Automobile Dealers Association, under license to J.D. Power.

# **EXHIBIT I**

**CERTIFICATE OF TITLE**

| VEHICLE IDENTIFICATION NUMBER | YEAR | MAKE | MODEL | BODY TYPE | TITLE NUMBER |
|---|---|---|---|---|---|
| 9F03L167259 | 1969 | FORD | 9F0 | 2D | 17800041617 |

| NEW | USED | DEMO | PREVIOUS TITLE NO | PREV STATE | SALES OR USE TAX | CO | ODOMETER |
|---|---|---|---|---|---|---|---|
| | X | | 17800041610 | TN | | 78 | |

DATE TITLE ISSUED     04-10-2019     REMARKS
DATE VEHICLE ACQUIRED     04-09-2019

**JAMES TONY BEGLEY**

███████████

SATISFACTORY PROOF OF OWNERSHIP HAVING BEEN
SUBMITTED UNDER TENNESSEE CODE ANNOTATED,
55-3-101, TITLE TO THE MOTOR VEHICLE DESCRIBED
ABOVE IS VESTED IN THE OWNER'S NAME HEREIN.
THIS OFFICIAL CERTIFICATE OF TITLE IS ISSUED
FOR SAID MOTOR VEHICLE.

9F03L167259

17800041617

30465819

3 0 4 6 5 8 1 9

RV-F1318101 REV 12/14

THE ORIGINAL DOCUMENT HAS A WHITE REFLECTIVE WATERMARK ON THE BACK. HOLD AT AN ANGLE TO SEE THE MARK.

**STATE OF TENNESSEE**

Tennessee Code Annotated section 55-3-114 provides that upon satisfaction of a lien, the lienholder shall within seventy-two (72) hours from the date of discharging the lien notify the Tennessee Department of Revenue of the discharge of this lien by registered mail with return receipt requested. To notify the department, complete the space provided on the Certificate of Title and the Lien Satisfaction on the reverse side of this form. Failure to comply is a class C misdemeanor, 55-3-127.

Detach the completed Lien Satisfaction Form and mail the form to the department at the address indicated below.

If there are additional liens indicated on the title, you will forward the title to the second lienholder. If there are no additional liens indicated on the title, you will forward the title to the owner within seven (7) business days from the date of discharging the lien.

The mailing address for forwarding the Lien Satisfaction Form is as follows:

STATE OF TENNESSEE
DEPARTMENT OF REVENUE
VEHICLE SERVICES DIVISION
44 VANTAGE WAY, SUITE 160
NASHVILLE, TN 37243-8050

▶ FEDERAL and STATE LAW requires that you state the mileage in connection with the transfer of ownership. Failure to complete or providing a false statement may result in fines and/or imprisonment

## ASSIGNMENT OF TITLE BY REGISTERED OWNER

This is to be completed by the seller and delivered to the purchaser with the vehicle. Purchaser must make application for a new Certificate of Title with the County Clerk. The undersigned hereby certifies that the vehicle described in this title has been transferred to the following printed name and address: (Record lien in space below)

▶ I certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked:
Odometer Reading ☐ 1. I hereby certify that the mileage stated is in excess of the mechanical limits of the odometer.
(No Tenths) ☐ 2. The odometer reading is not the actual mileage. WARNING - ODOMETER DISCREPANCY

SIGNATURE AND ADDRESS OF SELLER(S)_____

SELLER(S) NAME (Hand Printed)_____ "I am aware of the above odometer certification made by the seller."

DATE OF SALE_____ SIGNATURE OF BUYER(S)_____

SALES PRICE_____ BUYER(S) NAME (Hand Printed)_____

Make, VIN, Value of trade-in_____

▶ LIENHOLDER TO BE RECORDED AND SHOWN ON NEW TITLE:
1ST LIEN IN FAVOR OF
NAME & ADDRESS

## FIRST RE-ASSIGNMENT BY LICENSED DEALER

The undersigned hereby certifies that the vehicle described in this title has been transferred to the following printed name and address: (Record lien in space below)

▶ I certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked:
Odometer Reading ☐ 1. I hereby certify that the mileage stated is in excess of the mechanical limits of the odometer.
(No Tenths) ☐ 2. The odometer reading is not the actual mileage. WARNING - ODOMETER DISCREPANCY

SIGNATURE AND ADDRESS OF SELLER(S)_____

SELLER(S) NAME (Hand Printed)_____ "I am aware of the above odometer certification made by the seller."

DATE OF SALE_____ SIGNATURE OF BUYER(S)_____

SALES PRICE_____ BUYER(S) NAME (Hand Printed)_____

Make, VIN, Value of trade-in_____

State Sales Tax_____ Local Option Tax_____

▶ LIENHOLDER TO BE RECORDED AND SHOWN ON NEW TITLE:
1ST LIEN IN FAVOR OF
NAME & ADDRESS

## SECOND RE-ASSIGNMENT BY LICENSED DEALER

The undersigned hereby certifies that the vehicle described in this title has been transferred to the following printed name and address: (Record lien in space below)

▶ I certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked:
Odometer Reading ☐ 1. I hereby certify that the mileage stated is in excess of the mechanical limits of the odometer.
(No Tenths) ☐ 2. The odometer reading is not the actual mileage. WARNING - ODOMETER DISCREPANCY

SIGNATURE AND ADDRESS OF SELLER(S)_____

SELLER(S) NAME (Hand Printed)_____ "I am aware of the above odometer certification made by the seller."

DATE OF SALE_____ SIGNATURE OF BUYER(S)_____

SALES PRICE_____ BUYER(S) NAME (Hand Printed)_____

Make, VIN, Value of trade-in_____

State Sales Tax_____ Local Option Tax_____

▶ LIENHOLDER TO BE RECORDED AND SHOWN ON NEW TITLE:
1ST LIEN IN FAVOR OF
NAME & ADDRESS

WHEN FULL, CONTINUE ON TITLE EXTENSION FORM.

# EXHIBIT J

*J.P.Morgan*

**RICH STEEL**

Primary Account: ███████

For the Period 3/30/19 to 4/30/19

## Private Client Savings

| Savings Account Summary | Amount |
|---|---|
| Beginning Balance | ███ |
| Deposits & Credits | |
| Payments & Transfers | |
| Fees, Charges & Other Withdrawals | |
| Ending Balance | ███ |

Annual Percentage Yield Earned This Period*  ███
Interest Paid This Period
Interest Paid Year-to-Date

*Annual Percentage Yield Earned is an annualized rate that reflects the relationship between the amount of interest actually earned on the account during this statement period and the average daily balance in this account for the same period.*

## Transaction Detail

| Date | Description | Deposits & Credits | Transfers & Withdrawals | Balance |
|---|---|---|---|---|
| 03/30 | **Beginning Balance** | | | ███ |
| 04/01 | ████████ | | ███ | ███ |
| 04/03 | | | | |
| 04/12 | 04/12 Fedwire Debit Via: Smartbank/064209216 A/C: James A Begley Ref: 1965 Chevrolet C10 Shortbed Truck Bin: Vin: C1445Z164512 Imad: 0412B1Qgc03C007985 Trn: 1176500102Es | | 20,000.00 | ███ |
| 04/17 | ████████ | | ███ | |
| 04/18 | | | | |
| 04/18 | | | | |
| 04/22 | | | | |
| 04/26 | | | | |

## J.P.Morgan

# **EXHIBIT K**



**Primary Account:** ▉▉▉▉▉▉

For the Period 3/30/19 to 4/30/19

RICH STEEL

## Payments & Transfers  CONTINUED

| Date | Description | Amount |
|------|-------------|--------|
| 04/08 | ▉▉▉▉▉▉▉▉▉ | ▉ |
| 04/09 | | |
| 04/17 | | |
| 04/19 | | 833.68 |
| 04/22 | 04/22 Fedwire Debit Via: Smartbank/064209216 A/C: James A Begley Ref: 1979 C10 Silverado Shortbed Pickup Vin CCD139F369150 Restoration Work Imad: 0422B1Qgc03C008371 Tm: 1067000112Es | ▉ |
| 04/25 | ▉▉▉▉▉▉▉ | |
| 04/30 | | |
| 04/30 | | ▉ |
| **Total Payments & Transfers** | | |

## Fees, Charges & Other Withdrawals

| Date | Description | Amount |
|------|-------------|--------|
| 04/03 | ▉▉▉▉ | ▉ |
| 04/04 | | |
| 04/25 | | |
| 04/30 | | |
| **Total Fees, Charges & Other Withdrawals** | | |

J.P.Morgan